FILED
2024 Apr-23  PM 12:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*P. Michael Cunningham*
*Assistant United States Attorney*
*michael.cunningham@usdoj.gov*

*Suite 400:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Direct: 410-209-4884*
*Main: 410-209-4800*
*Fax: 410-962-3091*

December 11, 2023

Via email:
tom@tomrafterlaw.com

Thomas W. Rafter, Esquire
Law Office of Thomas W. Rafter, LLC
8 East Mulberry Street
Baltimore, MD 21202

      Re:    *United States v. James Sawyer*
                <u>Criminal No.  23-cr-0257-005-JRR</u>

Dear Mr. Rafter:

      This letter, together with the Sealed Supplement, constitutes the plea agreement (this "Agreement") that has been offered to your client, James Sawyer, (hereinafter "Defendant" or "Sawyer"), by the United States Attorney's Office for the District of Maryland, ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by December 18, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

      1.    The Defendant agrees to waive objection to amending the date in the count to August 9, 2018, and plead guilty to Count Twenty of the Indictment which charges him with Making or Causing to be Made (or aiding and abetting in the same) a False Statement to the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), in violation of 18 U.S.C. § 1001. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

            a.    First, that on or about August 9, 2019, in the District of Maryland and elsewhere, the Defendant made a statement or representation as alleged in the Indictment;

            b.    Second, that the statement or representation was material;

1

    c.      Third, that the statement or representation was false, fictitious or fraudulent;

    d.      Fourth, that the false, fictitious or fraudulent statement was made knowingly and willfully; and

    e.      Fifth, the statement or representation was made in a matter within the jurisdiction of the government of the United States.

Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 20 | 18 U.S.C. § 1001 | NA | 5 yrs | 3 yrs | $250,000 | $100 |

    a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

    e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.      Collection of Debts:  If the Court imposes a fine or restitution, the Offices' Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the

2

United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the Government to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by the Government.

<u>Waiver of Rights</u>

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial, except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights. ***Specifically, the Defendant will be giving up the right to possess firearms unless that right is restored to him at some time in the future.*** The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.     This Office and the Defendant further agree that the applicable base offense level for Count Twenty of the Indictment is 18, pursuant to United States Sentencing Guidelines ("USSG") §§ 2B1.1(c)(3) and 2K2.1(a)(5).

b.     This Office and the Defendant further agree that the Defendant will be sentenced <u>after</u> November 1, 2023. Accordingly, USSG § 4C1.1 will be in effect, resulting in a two (2) level decrease.

c.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention

4

to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

d. The final adjusted offense level, after adjustment for acceptance of responsibility as set forth in paragraph 6(c) is 13.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth in this agreement, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a):

a. A three (3) year term of supervised probation to include the following provisions:

(i) Eight (8) months of home detention with release for work and other circumstances approved by the supervising probation officer.

(ii) A fine of $1,000 to be paid incrementally during the term probation; and

(iii) 40 hours of community service to be performed during the term of probation.

In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

5

<u>Waiver of Appeal</u>

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever, except for appeals based on claims of ineffective assistance of counsel or prosecutorial misconduct. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

        b.     The Defendant and This Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), **except** as follows: the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

        c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

<u>Defendant's Conduct Prior to Sentencing and Breach</u>

11.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

12.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under

this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement.

Court Not a Party

13.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise. If the Court does not accept the plea agreement entered into under Rule 11(c)(1)(C), the Defendant has the right to withdraw his guilty plea.

Entire Agreement

14.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to us promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By:   _P. Michael Cunningham_

P. Michael Cunningham
Christine Goo
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/25/23
Date                                                            James Sawyer

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/30/23
Date                                                            Thomas W. Rafter, Esquire

ATTACHMENT A

STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

James SAWYER, (hereinafter, the Defendant or "SAWYER"), age 50, is a resident of Haleyvill, Alabama. SAWYER was the Chief of Police of the Ray Police Department in Ray, North Dakota, a position he held from at least 2015 until he resigned in or about February, 2023.

During SAWYER's tenure as Chief of Police, the city of Ray had a population of under 1,000 residents and its police department had only one sworn law enforcement officer, that being SAWYER. The Ray Police Department never had a SWAT unit.

Sean Sullivan was the principal owner and operator of Trident, LLC ("Trident") (formerly Trident Rifles, LLC), located in Gambrills, Maryland. Sullivan was also affiliated with B&T USA LLC, located in Tampa, Florida. Sullivan and Trident were Federal Firearms Licensees ("FFLs") and Special Occupational Taxpayers ("SOTs"), which allowed them, in certain circumstances, to possess, import, manufacture, and deal in fully automatic firearms (machineguns) and other firearms regulated by the National Firearms Act ("NFA"), Title 26, United States Code, Section 5801 et seq., and the Gun Control Act ("GCA"), Title 18, United States Code, Section 921 et seq.

Larry Vickers was the owner of the firearms-related business VT Guns, Inc. (formerly Vickers Tactical, Inc.), located in North Carolina. Vickers and his businesses were also FFLs and SOTs, which were authorized, in certain circumstances, to possess, manufacture, and deal in machineguns and other NFA firearms. Vickers was also an internet personality known for his extensive knowledge of firearms and related merchandise. Vickers operated a YouTube channel with many subscribers, on which he reviewed firearms, including many very rare firearms. Vickers also offered highly sought-after firearms training courses in various locations across the country. Most trainings were priced at over $500, and some were priced at more than $1,000. Vickers was an acquaintance of SAWYER.

Federal law generally prohibits the transfer and possession of machineguns that were imported or manufactured after May 19, 1986, except to or by bona fide government agencies. Further, federal law generally prohibits the importation of machineguns except by or for bona fide government agencies. Relevant to this case, there is an exception to the general prohibition on the transfer, possession and importation of machineguns.

Machineguns may be transferred to, possessed by, and/or imported by an FFL/SOT for use as a "sample" for demonstration to potential bona fide government agency purchasers. This exception is frequently referred to as the "dealer sales sample" exception. Pursuant to the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") regulations, the exception requires

1

the government agency that is requesting a demonstration of the machinegun to submit a "law letter" to the ATF. A "law letter" is an industry term that refers to a letter signed by a government official expressing a need for a particular model of machinegun or interest in seeing a demonstration of that model of machinegun for potential future purchase by the government agency for its use in official duties. The dealer sales sample exemption requires the dealer to have a law letter, prior to purchase of the machinegun, to be submitted with the requisite ATF Form, known as an ATF Form 6. The law letter is also known as a "demonstration letter" or "demo letter."

Between in or about August 2015, to in or about August 2020, SAWYER signed and submitted approximately 32 law letters that requested demonstration of approximately 73 firearms, of which number approximately 21 firearms weapons were imported by SULLIVAN.

On or about August 6, 2018, the following electronic communications took place between Sullivan and Vickers and Vickers and SAWYER:

| | |
|---|---|
| Sullivan to Vickers: | Would you mind getting your chief to do a demo letter for me for a couple prototypes from Karl? |
| Vickers to Sullivan: | I'll certainly try Let's give it's shot |
| Vickers to Sullivan: | Also can you email me what exactly you want on your demo letter? |
| Sullivan to Vickers: | Just did. |
| Vickers to Sullivan: | Got it I'm pinging my LE guy now ….. |
| | |
| Vickers to SAWYER: | Chief My importer- who is a great guy, former Marine and has really done me Solid- asked me to ask you if you could do a demo letter for him As a favor to me I'd like to ask you to do it- normally I'd never ask for Anyone else but he has went above and beyond for me If your good with it I sent the letter template he needs to your email |
| SAWYER to Vickers: | I never would either. However as a personal favor to you I'll make this one time exception. You are the only one I've ever done these for because I consider you a good friend brother. |
| Vickers to SAWYER: | Thanks I really appreciate it Consider this a one time occurrence One and Done |
| SAWYER to Vickers: | You got it brother. |
| SAWYER to Vickers: | He owes you one now! |
| Vickers to SAWYER: | Yep !! He has really went above and beyond for me or I would have never asked !! |
| SAWYER to Vickers: | Understood glad I can help bro |
| Vickers to SAWYER: | Thanks!! |
| | |
| Vickers to Sullivan: | Hey my guy says he will do it for you this once no problem |
| Sullivan to Vickers: | Thanks. And tell him it's much appreciated |
| Vickers to Sullivan: | Will do ! |

On or about August 8, 2018, SAWYER signed a law letter on Ray Police Department letterhead, addressed to Trident Rifles, LLC, in Odenton, Maryland, requesting demonstrations of a B&T AG APC9K, Cal. 9mm, "Submachinegun," a  B&T AG APC9KSD, Cal. 9mm, "Submachinegun," a B&T AG APC40, Cal. 40 S&W, "Submachinegun," and a B&T AG GHM9K, Cal. 9mm, "Submachinegun," "for possible future purchase and use of our officer in the performance of his official duties"

On or about August 9, 2018, Sullivan attached SAWYER's August 8, 2018, law letter, to and in support of his request to ATF for an exemption to import a B&T AG APC9K, Cal. 9mm, machinegun, a B&T AG APC9KSD, Cal. 9mm, machinegun, a B&T AG APC40, Cal. 40 S&W, machinegun, and a B&T AG GHM-Police, Cal. 9mm, machinegun APC40 machine.

On or about November 20, 2018, Sullivan filed an ATF Form 6A with ATF's Imports Branch indicating he had imported a APC9KSD machinegun with serial number US18-28612. On or about March 14, 2020, Sullivan filed an ATF Form 6A with ATF's Imports Branch indicating he imported a B&T AG APC40 machinegun having serial number US19-33205.

At the time that he signed the August 8, 2018, law letter for the aforementioned firearms, SAWYER had no expectation or understanding that such weapon would ever be demonstrated to his law enforcement agency.  Moreover, Vickers and Sullivan likewise knew that this law letter was fraudulent from the inception of its creation, and that the law letter would be submitted to ATF.

At all times, SAWYER acted knowingly and willfully.

SO STIPULATED:

December 11, 2023
_____
Date

P. Michael Cunningham
Christine Goo
Assistant United States Attorney


12/25/23
_____
Date

12/30/23
_____
Date

James Sawyer
Defendant

Thomas W. Rafter, Esquire

3